# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| STEVEN P. CAPERTON, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | * |
| JASON MCQUAIG and CHRIS | *   CV 510-045 |
| MCQUAIG, Individually and in | * |
| their Official Capacities as | * |
| Deputy Sheriffs for Ware | * |
| County, Georgia, | * |
| | * |
| Defendants. | * |

## ORDER

Presently before the Court is Defendants Jason McQuaig's and Chris McQuaig's Motion for Summary Judgment. See Dkt. No. 18. For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

**BACKGROUND**

During the early morning hours of May 16, 2008, Defendants Jason McQuaig and Chris McQuaig, both Ware County deputy sheriffs, attempted to stop a vehicle driven by Plaintiff Steven P. Caperton. Despite seeing police lights behind him, Plaintiff did not stop his vehicle for several miles until the vehicle ran

out of gas. Upon stopping, Plaintiff exited the car and ran toward some nearby woods. As he approached the tree line, Plaintiff stopped fleeing and lowered himself to the ground on his stomach.

Plaintiff contends that while he was on the ground, Defendants struck him on the face a number of times, both before and after he was placed in handcuffs. Plaintiff claims that Jason McQuaig struck him a total of seven or eight times. In connection with the events leading up to his arrest, Plaintiff entered a plea of guilty to the charges of DUI, driving with a suspended license, and obstruction.

Plaintiff alleges that despite his guilty plea, he is entitled to damages under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments. Plaintiff seeks compensatory damages, punitive damages, and attorneys fees. Dkt. No. 1.

Defendants now move for summary judgment on the grounds of (1) the Heck doctrine, (2) the doctrine of collateral estoppel, and (3) Eleventh Amendment immunity. Dkt. No. 18. Defendants also seek summary judgment as to Plaintiff's Fourteenth Amendment claims, which Plaintiff has withdrawn. See Dkt. No. 24-2, at 14.

**LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

**DISCUSSION**

**i. The Heck Doctrine**

Defendants allege that Heck v. Humphrey, 512 U.S. 477 (1994), bars this lawsuit. Heck establishes that a plaintiff may not maintain a § 1983 lawsuit "if judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487. The Heck bar applies in any case where the plaintiff, "[i]n order to prevail in [his] §

1983 action, . . . would have to negate an element of the offense of which he has been convicted." Id.

Defendants argue that Heck bars this lawsuit because Plaintiff's factual allegations and deposition testimony conflict with the "criminal warrant that lead [sic] to Plaintiff's obstruction charge" to which Plaintiff plead guilty. See Dkt. No. 18-4, at 3. Specifically, Defendants note that while the criminal warrant states that Defendants "had to wrestle with [Plaintiff] because he would not cooperate with their orders," Plaintiff alleges that Defendants applied force "without any legal justification" and expressly denies ever having wrestled with Defendants. See id.

Defendants' argument rests entirely on the assumption that by pleading guilty to obstruction, Plaintiff admits all of the facts contained in the criminal warrant leading to the obstruction charge. Defendants cite no legal authority – and the Court is aware of none – supporting that assumption.

In entering a guilty plea, Plaintiff reviewed and signed a charging document that set forth five counts. The obstruction count accuses Plaintiff of

> knowingly and willfully obstruct[ing] and hinder[ing] Jason McQuaig, a law enforcement officer in the lawful discharge of his official duties, to wit: did not stop when said officer attempted to make a routine traffic stop on the accused and did flee on foot from said officer when accused did stop his vehicle . . .

Dkt. No. 18-3, at 3. The signed document contains no allegations of wrestling or any other use of force against Defendants. Indeed, the admitted allegations in the obstruction count are consistent with Plaintiff's claims in this case. The allegation that Defendants applied excessive force after Plaintiff fled in no way invalidates or negates any element of the obstruction charge to which Plaintiff has pled guilty. As a result, Heck does not mandate summary judgment in favor of Defendants.

### ii. Collateral Estoppel

Defendants claim that "pursuant to the doctrines of issue preclusion and collateral estoppel, [Plaintiff] is barred from pleading that he did not wrestle with the officers." Dkt. No. 18-4, at 12. Again, without citing any legal authority, Defendants argue that "the facts to consider as true" as a result of Plaintiff's guilty plea "are those set forth in the criminal warrant." Id. at 11. Defendants further argue that Plaintiff "is barred from taking a position inconsistent with the facts described in the criminal warrant," this time citing two Georgia cases, Wharton v. Anderson, 504 S.E.2d 670 (Ga. 1998), and Thorp v. State, 457 S.E.2d 234 (Ga. Ct. App. 1995). Id. at 12.

In Wharton, the Georgia Supreme Court considered whether a trial court was permitted to accept a guilty plea for a crime that was neither charged expressly in the indictment nor a lesser included offense of a charge in the indictment. 504 S.E.2d at 671-72. The Court held that the trial court could accept such a plea because "the substance of the charge," while not included in the indictment, "was conveyed to the accused" during his guilty plea hearing Id. at 672. Wharton's relevance to this case is unclear. It does not address the key issue before the Court: whether a defendant admits all of the facts alleged in a criminal warrant simply by entering a guilty plea. Defendants' reliance on Wharton, therefore, appears misplaced.

Defendants' second cited case is similarly unhelpful. In Thorp, the Georgia Court of Appeals noted in passing that the trial court had characterized the appellant's guilty plea to the offense of possession of cocaine "as being an admission of guilt – in solemn judicio – to possession of cocaine with intent to distribute." 457 S.E.2d at 275.[1] In the present case, Plaintiff readily admits that his guilty plea as to obstruction is an admission of guilt as to that offense. As a result, Thorp does not advance Defendants' argument.

As explained, the Court is aware of no legal basis for concluding that Plaintiff, by pleading guilty to an offense,

---

[1] Defendants' parenthetical explanation of Thorp simply states, "guilty plea as an *admission in judicio*." Dkt. No. 18-4, at 12.

admits facts contained in the criminal warrant but not in the charging document executing the guilty plea. The charging document executing Plaintiff's change of plea does not include any facts indicating that Plaintiff wrestled with Defendants. There is no indication in the record that Plaintiff or his attorney ever reviewed the criminal warrant, much less admitted the facts alleged therein. The Court simply has no basis for finding that Plaintiff admitted to wrestling Defendants. As a result, Defendants' collateral estoppel argument fails.

### iii. Fourteenth Amendment Claims

Defendants argue that Plaintiff has raised no valid Fourteenth Amendment claims. Plaintiff has since withdrawn all of those claims, rendering the motion moot as it relates to such claims.

### iv. Eleventh Amendment Immunity

Defendants claim that because they are Deputy Sheriffs for Ware County, Georgia, they are entitled to Eleventh Amendment immunity from suit in their official capacities. Dkt. No. 18-4, at 14. The "Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Whether a defendant is an 'arm of the state' must be assessed in light of

AO 72A
(Rev. 8/82)

the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. at 1308. In making this determination, the Court considers four factors set forth in Manders: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309.

The first factor takes the analysis to Georgia's constitution. The constitution designates a sheriff as a "county officer." Ga. Const. art. IX, § 1, ¶ 3(a)-(b). Nonetheless, under Georgia law, a sheriff's office is separate and independent from the county commission, and is subject to the control of the state legislature. See Manders, 338 F.3d at 1310. This factor sways the Court in favor of granting a sheriff Eleventh Amendment immunity.

Second, Georgia's constitution grants the Georgia legislature "the exclusive authority to establish and to control a sheriff's powers and duties;" thus, sheriffs are not county employees. Id. (citing Ga. Const. art. IX, § 1, ¶ 3(a)-(b)). This factor also tends to persuade the Court to grant the deputy sheriffs Eleventh Amendment immunity because the State has "direct and substantial control over the sheriff's duties, training, and discipline and the county [has a] total lack thereof." Id. at 1322.

The third factor, however, cuts both ways. The state of Georgia "funds the annual training of sheriffs, funds the Governor's disciplinary procedure over sheriffs for use of excessive force, and pays for certain state offenders assigned to the county jails under the sheriff's supervision." Id. at 1323. Counties, on the other hand, fund the majority of the expenses of the sheriff's office (jails, the sheriff's salary, and the premium for the sheriff's official bond), pursuant to Georgia statute. Id.

Fourth, Ware County would not be responsible for judgments against Defendants. Under Georgia law, a defendant county is not monetarily responsible for judgments against deputy sheriffs in tort or civil rights actions. Id. at 1327. However, there is no Georgia law "expressly requiring the State to pay an adverse judgment against [a sheriff] in his official capacity," and so a sheriff would have to pay such a judgment out of his sheriff's office budget. Id. "Because both state and county budgets would be affected, 'at a minimum, the liability-for-adverse judgment factor does not defeat an immunity claim.' " Lewis v. Wilcox, No. 3:06-CV-29, 2007 WL 3102189, at *8 (M.D. Ga. Oct. 23, 2007)(quoting Manders, 338 F.3d at 1328).

In light of these four factors, the Eleventh Circuit found in Manders that a sheriff was an "arm of the state" when working in corrections at a local jail. Id. at 1328. The present case

involves law enforcement, rather than corrections, because the alleged conduct at issue took place while Defendants sought to effect an arrest, pursuant to state DUI laws. See Dkt. No. 18-3, at 2. Nonetheless, the Court finds that the four factors as applied to the present case yield the same result as in Manders. Each Defendant was acting as an "arm of the state" in enforcing state law. See Scott v. Mercier, No. 5:06-CV-33, 2007 WL 2728440, at *4 (S.D. Ga. Sept. 14, 2007)(Wood, J.)(holding that deputy sheriff was acting as arm of the state in attempting to "resolve a civil dispute involving the custody of minor children, a matter governed by state law"); see also Mladek v. Day, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003)(finding that sheriff and sheriff's deputies acted as arms of the state in effecting arrest and subsequent detention). As a result, the Eleventh Amendment immunity bars Plaintiff's claims against Defendants in their official capacities.

**v. Qualified Immunity**

Finally, Defendants argue that they are entitled to qualified immunity from suit in their individual capacities. Dkt. No. 18-4, at 16.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established

statutory rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). Qualified immunity is available if (1) the official was "acting within his discretionary authority" when the conduct in question took place, and (2) the conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009). "Once [a defendant] raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2002). In determining whether Defendants are entitled to qualified immunity, all issues of material fact are resolved in favor of the plaintiff. See Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).

According to Plaintiff's account of the morning of May 16, 2008, which the Court accepts as true for the purposes of this motion,[2] Plaintiff initially fled from Defendants, first in his vehicle and then on foot. See Dkt. No. 1, at 5. Plaintiff ran toward some woods, but before reaching the tree line, he lowered himself to the ground so that he was lying face down. Although Plaintiff admits his left hand

---

[2] Defendants present their own version of the facts based on the erroneous assumption that collateral estoppel and issue preclusion apply in this case.

11

was initially positioned underneath his body, he contends that he put his hand back to be handcuffed. See Dkt. No. 24-1, at 4. Plaintiff claims that Defendants proceeded to beat him by continuously striking his face with their fists, before and after he was in handcuffs. See Dkt. No. 1, at 5.

Accepting Plaintiff's version of the disputed facts as true, as must be done at this stage, a finder of fact might find that Defendants' alleged conduct violated clearly established constitutional rights. According to Plaintiff, although Plaintiff initially fled from Defendants, by the time Defendants applied force, he had submitted to their authority and did not resist arrest. Defendants continued beating Plaintiff, even after he was placed in handcuffs. The Eleventh Circuit has made clear that "a handcuffed, non-resisting defendant's right to be free from excessive force [is] clearly established." Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008). A reasonable officer would conclude that repeatedly punching a non-resisting criminal suspect lying face down on the ground – first with his hands behind his back and then with his hands in cuffs – would constitute excessive force. As a result, Defendants are not entitled to qualified immunity in this case at this time.

**CONCLUSION**

For the reasons stated, Defendants' Motion for Summary Judgment is **GRANTED** as to Eleventh Amendment immunity and **DENIED** as to all other issues. Additionally, Plaintiff's Fourteenth Amendment claims are withdrawn.

**SO ORDERED**, this 12th day of August, 2011.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)